W. B. WARREN, Appellant, *v.* A. C. DICKSON, and
JOHN H. DICKSON, Appellees.

APPEAL FROM MORGAN.

It is error to instruct the jury, that if the defendant purchased lumber from the plaintiffs without disclosing the fact that he was purchasing as the agent of another, he became personally liable for the price of the lumber—because the plaintiffs may have known all the time that the defendant was merely an agent; in which event, he would not be personally liable.

It does not follow that a judgment will be reversed, because an improper instruction has been given for the plaintiff and appellee, if the other instructions on his behalf, put the whole case fairly before the jury.

The statute of frauds must be pleaded, if it is to be relied upon by the defendant. He cannot set it up, for the first time, in an instruction.

THIS was an action of assumpsit on an account for lumber. The first item in the account is in the following words : " 1856, Jan. 25th. To amount per P. Warren, $68.59." Then an account for lumber, amounting to $361.24, running from April 19, 1856, to September 2, 1858.

The defendant pleaded the general issue.

Upon the trial of the case, the plaintiffs introduced as a witness *Samuel Markoe*, who testified that he had no personal knowledge of any of the items of plaintiffs' account sued for in this case, excepting those commencing November 10, 1857, and ending December 4, 1857 ; that these items were selected by the defendant and were delivered by witness, who was at the time a clerk for plaintiffs at their lumber yard, to a man by the name of Hobson, who then lived upon the farm where they were used. Witness heard nothing said by defendant at the time about the lumber being charged to any other person. Witness also stated, that in a conversation he had with the defendant during the present term of the court, defendant admitted the correctness of the account, excepting one item, to wit, the siding charged at $30, which he said he did not obtain. Witness, upon his cross-examination, stated, that the first item in plaintiffs' account was for an account of that amount against Phil. Warren, which was transferred and charged on plaintiffs' books against defendant. Witness also stated, that the defendant, in the conversation above spoken of, also said that the item of lumber delivered to Hobson for the farm ought to have been charged to his son, William M. Warren, and not to him (defendant) ; that defendant did not, in the conversation alluded to, speak of the account as " the account sued upon in this case," or " the account in suit," or " in court," or attached to any declaration ; he said it was

not necessary to call me as a witness, because he would admit the charges I had made. He had no doubt they were correct. I understood him to speak of the account in suit.

Plaintiffs then introduced *James H. Dickson*, who testified, that he is a son of plaintiff, Archimedes C. Dickson; that witness saw the defendant in St. Louis last winter, on the 13th of February, at the office of A. C. Dickson & Co.; that defendant left the office to visit some of his friends, and saying that he would return again; that after defendant left, father requested witness to secrete himself in the office for the purpose of hearing what might be said by defendant on his return; that father notified witness when defendant was returning, and witness secreted himself in the stairway leading up stairs out of the office, locking the door after him; that when defendant came in, witness heard him say that John had sued him up here; that he knew that he owed the account, and if he had the money he would pay it then, but he hadn't it, and he wanted the case continued until he could get the money; father gave him a paper; defendant wanted the words "and son" added to it, and father went back to the desk and witness supposed he added those words. The plaintiffs here rested their case.

The defendant, with the consent of the plaintiffs, then read in evidence to the jury the following letter, to wit:

I. L. MORRISON:

*Dear Sir*—You will continue the suits as to *A. C. Dickson & Son* v. *W. B. Warren and W. M. Warren*, until I come up and have the matter arranged.

*St. Louis, February* 13, 1861.          A. C. DICKSON & SON.

The defendant then introduced *Wm. M. Warren* as a witness, who testified, that he is a son of the defendant; that the items contained in the account sued for in this case, commencing Nov. 10, 1857, and ending Dec. 4, 1857, were engaged and contracted for by witness, with the plaintiff, A. C. Dickson, and were by agreement to be furnished witness in part payment of the indebtedness of the plaintiff to him, witness, for the purpose of being used upon a farm owned by witness and his father, and then occupied by one Hobson; and witness notified plaintiff at that time that his father or said Hobson would come and get them; that soon after the above items had been obtained, the plaintiff, John H. Dickson, on meeting witness said to him, "You must be building a large house; your father has got a large quantity of lumber on your account, which we have charged to you." To which witness eplied, "No, it was only for a small house for a tenant."

Witness further testified, on cross-examination, that the indebtedness of plaintiffs to him, above spoken of, was for witness' interest in lumber left at the time of the dissolution of the firm of A. C. Dickson and witness, Wm. M. Warren, at their lumber yard in Jacksonville, to which firm the plaintiffs were successors in the same business and at the same lumber yard.

The defendant here rested his case.

Whereupon plaintiff introduced *Isaac L. Morrison,* who testified, that the firm of A. C. Dickson and Son was dissolved some time previous to February 13, 1861, and that he had for some time previous held the books and accounts of said firm; and that by arrangement between said plaintiffs, said John H. Dickson had the control of the business of the former firm.

The instructions asked for by the plaintiff and given on his behalf, are set out in the opinion of the Court.

The defendant asked the court to instruct the jury as follows, to wit:

2.  The court further instructs that for so much of plaintiffs' account as the jury shall believe, from the evidence, is for lumber furnished on the account, or on the credit of Wm. M. Warren, the plaintiffs have no right to recover in the case.

3.  The court further instructs that the defendant is not liable for the account against Phil. Warren, charged in plaintiffs' account, unless the jury find from the evidence that the defendant has promised in writing to pay the same.

The court refused to give defendant's instruction No. 3, and also refused to give defendant's instruction No. 2, until the same was modified by adding the words " unless they shall believe that defendant admitted its correctness or promised to pay it;" and when so modified, gave the same. To which refusal to give said instruction, and to the action of the court in modifying the said instruction No. 2, and giving the same as modified by the court, the defendant, by his counsel, then and there excepted.

The jury found a verdict for plaintiff. Motion by defendant for new trial overruled, and appeal granted.

The errors assigned are: The verdict was against all the evidence; the court erred in giving instructions asked by plaintiff; also in giving instructions asked by defendant; the court erred in modifying defendant's instructions; and in overruling motion for new trial, and rendering judgment against defendant.

SCHOLFIELD & EDMUNDS, for Appellant.

I. L. MORRISON, for Appellee.

Breese, J. The principal errors assigned on this record, question the correctness of the instructions given by the court. The first instruction given for the plaintiff is as follows :

" The court instructs the jury for the plaintiffs, that if they find from the evidence in the case that the defendant called at the yard of plaintiffs for any of the lumber in the bill of items filed in this case, and that he agreed upon the prices of the lumber, and had the same selected ; and that said items of lumber were charged at the time of its sale and delivery by plaintiffs to defendant, and that defendant did not then disclose the fact to plaintiffs, that he, defendant, was purchasing said lumber for and on account of W. M. Warren, then defendant became personally liable for the value of said lumber, notwithstanding they may find from the evidence in the case that defendant, at the time of the sale and delivery aforesaid, was in fact acting as the agent of W. M. Warren, in the purchase of the same."

This instruction was clearly wrong, for the plaintiffs may have known perfectly well, that the defendant was getting the lumber for another, and not on his own account. In such a case, it surely was not necessary for the defendant to disclose his agency. If the plaintiffs knew that fact, why disclose it, on receiving the lumber ? The instruction shuts out of view this consideration.

We see no objection to the modification of defendant's second instruction, nor in the refusal to give the third instruction. The statute of frauds was not pleaded, or in any shape set up, as a defense. Consequently, according to the rulings of this, and other courts, it can not be set up in the form of instructions.

But though the first instruction of plaintiffs was wrong, does it follow the judgment should be reversed ? The second instruction asked by plaintiff, puts the whole case fairly and squarely before the jury, and to which we see no objection, and we have been pointed to none. It is this : " That if they find, from the evidence in the case, that the defendant admitted the account sued on in this case to be correct and unpaid, and promised to pay the same, that such admissions are sufficient evidence to entitle the plaintiffs to recover the amount of said account, unless they further find from the evidence that defendant when he made the admission, was as a fact mistaken in the facts in regard to said account."

The statute of frauds not having been pleaded and relied on, it was competent, by the defendant's unqualified promise to pay the debt, to charge him with it. The jury have found the defendant made the admissions and promise, with a full

knowledge of all the facts in regard to the account, and it ought to bind him. The testimony of James H. Dickson, relied on by the jury, fully establishes the liability growing out of an express promise to pay the account. The judgment must be affirmed.

*Judgment affirmed.*